# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICKY GREENE,

    *Plaintiff*,

*v.*                           CASE NO. 2:14-CV-10005-DPH–PTM

COMMISSIONER OF            DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,           MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.   RECOMMENDATION

In light of the entire record, I suggest substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

## II.   REPORT

### A.   Introduction and Procedural History

This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), by Notice of Reference to review the Commissioner's

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

decision denying Plaintiff's claim for Disability Insurance Benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 10.)

Plaintiff Dennis Smith was fifty-five years old at the most recent administrative hearing. (Transcript, Doc. 6 at 33, 142.) Plaintiff worked full time for thirty-four years in automotive assembly. (Tr. at 164.) Plaintiff filed the present claim on May 31, 2011, alleging that he became unable to work on May 16, 2010. (Tr. at 142.) The claim was denied at the initial administrative stages. (Tr. at 82.) In denying Plaintiff's claims, the Commissioner considered discogenic and degenerative back disorders and other and unspecified arthropathies. (*Id*.) On July 24, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Kevin Fallis, who considered the application for benefits *de novo*. (Tr. at 33-81.) In a decision dated September 26, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 15-32.) On October 5, 2012 Plaintiff requested a review of this decision. (Tr. at 12-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 17, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On January 1, 2014, Plaintiff filed the instant suit, seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1 at 1.)

### B.    Standard of Review

The Social Security Administration has promulgated the following rules for the administration of disability benefits. *See* 20 C.F.R. §§ 401-422. First, a state agency, acting under the authority and supervision of the Administration, usually makes the initial determination of whether a person is disabled. 20 C.F.R. § 404.1503; *Bowen v. Yuckert*, 482

U.S. 137, 142 (1987). If denied, the claimant may seek review of the state's decision through the Administration's three stage review process. *Yuckert*, 482 U.S. at 142. In the first step of this process, the state's disability determination is reconsidered *de novo* by the state agency. *Id.* Next the claimant has the right to a hearing before an ALJ. *Id.* Finally, "the claimant may seek review by the Appeals Council." *Id.* Only after the Commissioner has issued a final administrative decision that is unfavorable may the claimant file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decisions under 42 U.S.C. § 405(g). This is a limited review where we "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

### C.    ALJ's Five Step Sequential Analysis

The "[c]laimant bears the burden of proving his [or her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). While, in general, the claimant "is responsible for providing the evidence" to make a residual functional capacity ("RFC") assessment, before a determination of not disabled is made, the Commissioner is "responsible for developing [a

3

claimant's] complete medical history, including arranging for a consultative examination[] if necessary." 20 C.F.R. § 404.1545(a)(3).

Disability Insurance Benefits ("DIB"), provided for in Title II, 42 U.S.C. §§ 401-434, are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Supplemental Security Income ("SSI"), provided for in Title XVI, 42 U.S.C. §§ 1381-1385, is available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v.Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by" an impairment that precludes performance of past relevant work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003), *cited with approval in Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). If the analysis reaches step five the burden shifts to the Commissioner to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(a)(4)(g)); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

### D.   ALJ Findings

The ALJ applied the five step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2015 and had not engaged in substantial gainful activity since March 16, 2010, the alleged onset date. (Tr. at 20.) At step two, the ALJ found that Plaintiff's impairments of "degenerative disc disease of the lumbar, cervical and thoracic spin and chronic pain" were severe within the meaning of 20 C.F.R. § 404.1520. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 24-26.) At step four, the ALJ found that Plaintiff was able to perform his past relevant work as an assembler. (Tr. at 27-28.) The ALJ also made an alternative step-five finding that Plaintiff was able to

work in other jobs existing in the national economy. (Tr. at 28.) At the alleged onset date

Plaintiff was fifty-three years old, putting him into the "approaching advanced age" range (Tr.

at 28.) The ALJ found at step four and alternatively at step five, that Plaintiff could perform

light work with additional exertional limitations. (Tr. at 26.) Therefore, the ALJ found that

Plaintiff was not disabled. (Tr. at 28-29.)

### E.    Administrative Record

### 1.    Medical History

On May 22, 2010, Plaintiff saw Mazher Hussain, M.D. at Mid-Michigan Pain

Management Center for the "back, low back, and neck pain" that he had been experiencing

since March 2010. (Tr. at 198-99.) In his notes, Dr. Hussain stated that Plaintiff "report[ed]

that he had an incident at his work where his supervisor hit him in his back and he has been

having pain since then." (*Id.*) Plaintiff reported his back pain as "constant aching along with

intermittent sharp pain." (*Id.*) His neck pain had been "subsiding to some extent." (*Id.*) Bending

backward and standing for a long time worsened his pain, while bending forward helped. (*Id.*)

He also had intermittent numbness in his left leg and muscle spasms in the lower part of his

neck and his lower back. (*Id.*) He had been taking naproxen for the pain and refused anything

stronger; he was also taking blood pressure medicine. (*Id.*) He reported that the pain was

interfering with his daily activities and that he had been going to physical therapy. (*Id.*)

Plaintiff was "pleasant and calm," alert and oriented to time, place, and person. (*Id.*) He

exhibited "mild tenderness in the lower lumbar paravertebral muscles area," and his straight leg

test was "positive in the right leg." (*Id.*) He also had tenderness in the lower cervical

paravertebral area and trigger points in both scapular areas. (*Id.*) There were "[n]o significant

range of motion and limitation[s] noted." (*Id.*) Dr. Hussain's impressions were lumbar radicular pain, myofascial pain syndrome, and cervical facet arthropathy. (*Id.*)

On September 22, 2010, Plaintiff went to Hurley Medical Center for right shoulder and arm pain and was prescribed Vicodin. (Tr. at 201-03.) The records note a history of chronic back pain. (*Id.*) His shoulder and arm pain worsened with movement. (*Id.*) The clinical impression was right shoulder strain. (*Id.*)

Plaintiff saw Dr. Abdullah Raffee, M.D., for the first time on April 26, 2010. (Tr. at 220.) Apparently, Plaintiff had been seeing a Dr. Latchana, but had a "falling out" with him so he switched doctors. (*Id.*) Plaintiff reported that he had been "struck in the back by his supervisor on [March 15, 2010]. . . . [A]ccording to him he suffered a whiplash injury. He went down in a rotation[-]like man[ne]r. In doing so he injured his back as well. Today he has a headache, dizziness, problems with vision, [and] left leg numbness." (*Id.*)

The May 17, 2010 MRI of the cervical spine showed "a broad-based central disc bulge at C3-C4 and C4-C5 with very slight effacement of the anterior central portion of the spinal cord. There [was] moderate narrowing of the left and right neuroforamen at these levels secondary to the broad-based central disc bulge at C3-C4 and C4-C5." (Tr. at 221-24.)

Plaintiff continued treatment with Dr. Raffee, with monthly visits from May 10, 2010 to May 27, 2011. (Tr. at 211-19.) Progress notes document "spasm of the paraspinal muscles," and limited left side straight leg raising tests. (*Id.*) He was also tender upon flexion, which was limited to seventy degrees. (*Id.*) The diagnosis was lumbar radiculopathy. (*Id.*) Dr. Raffee noted that Plaintiff "remain[ed] on disability because of his . . . . continue[d] . . . back pain in the low lumbar area with radiation into the left leg." (*Id.*) He experienced a great deal of pain

when he laid down at night and when he ambulated for long periods of time. (*Id.*) During this period he was also receiving physical therapy. (*Id.*) Plaintiff also saw Dr. Raffee on June 23, August 1, September 7, and October 28, 2011. (Tr. at 238-45.)

At the July 15, 2010 appointment Dr. Raffee noted that Plaintiff was "still . . . very paranoid about being attacked at work from the back. He still suffer[ed] with posttraumatic stress syndrome." (Tr. at 217.) At the May 10, 2010 appointment, the progress notes state that Plaintiff was concerned because after his altercation at work "he stood up and saw stars." (Tr. at 219.)

Plaintiff went to an orthopedic consultative examination with Dr. Clifford M. Buchman, DO on August 19, 2011. (Tr. at 225-33.) Dr. Buchman's diagnosis was "[l]ow back pain without signs of melopathy or herniated disc." (Tr. at 232.) His conclusion was that Plaintiff was "able to sit, stand or walk eight hours in an eight-hour day. He c[ould] do fine or gross manipulation with his hands. He [was] able to interact with people." (*Id.*) At this visit Plaintiff was using a cane in his left hand that he said had been recommended by Dr. Raffee. (Tr. at 230.) Plaintiff's "[t]andem gait was satisfactory" and he declined to perform the heel and toe walk part of the examination. (Tr. at 231.) Dr. Buchman opined that "[c]linical evidence d[id] not support" Plaintiff's need for the cane. (*Id.*) Among other things, Dr. Buchman indicated that Plaintiff could sit with frequent changes in position, stand, bend, stoop, carry, push, pull, button clothes, tie shoes, dress/undress, open doors, make a fist, write, get on and off exam table, and climb a few stairs at a time; however, Plaintiff could not squat and arise from squatting. (*Id.*)

Plaintiff went to Dr. Jawad Shah, M.D., on June 7, 2011 for a new patient consultation.

(Tr. at 234-35.) He explained that he had been having back, neck, and leg pain for the last fifteen months and was experiencing intermittent numbness and weakness in his left leg. (*Id.*) "Sitting, standing, walking, bending, squatting and lying down ma[d]e [Plaintiff's] pain worse while changing positions help[ed] to reduce it." (*Id.*) His pain and other symptoms had "limited his housework, yard work and other daily activities." (*Id.*) Dr. Shah found his gait normal. (*Id.*) He was assessed with spinal stenosis and radiculopathy. (*Id.*)

Plaintiff saw Dr. Gerald A. Shiener, M.D., on May 2, 2012 for a psychiatric evaluation. (Tr. at 258-64.) Dr. Shiener reported his findings in a letter to Plaintiff's attorney. (*Id.*) According to Dr. Shiener, his findings were based upon records that he had been given from Dr. Latchana and Medical Records from General Motors. (*Id.*) However, neither of these records appear in the transcript.

Dr. Shiener's diagnostic impression was "[c]ognitive and [m]ood [d]isorder secondary to traumatic brain injury, frontal lobe, disinhibited type"; posttraumatic stress disorder; and "[p]ain disorder with post-traumatic cephalgia and depressive reaction." (*Id.*) He was assessed with a Global Assessment of Functioning ("GAF") score of forty. (*Id.*) Plaintiff relayed his version of what led up to his assault at work on March 15, 2010. (Tr. at 259.) In relevant part, he said that Plaintiff "ducked and turned and felt someone striking him on his back and his neck," and Plaintiff was knocked into a forklift. (*Id.*) One of his coworkers told him he had been hit in the back. (*Id.*) Plaintiff claims that as a result of this incident he has problems with distrustfulness, irritability, anger, and fearfulness, especially when people are behind him. (*Id.*) He also reported, in addition to his pain, problems with being socially withdrawn, and

nosebleeds, dizziness, and headaches. (*Id.*) He also complains about vertigo, scotoma, nausea, photophobia, and a decreased sense of smell and taste. (*Id.*)

### 2.    Function Report and Testimony at Administrative Hearing

In his Adult Function Report, Plaintiff explained that "some days" he could not do "anything because of pain." (Tr. at 181.) He did not take care of anyone besides himself, did not care for pets, the pain kept him up at night, and he had difficulty standing and bending when tending to his personal care. (*Id.*) He was able to prepare "quick and easy" meals by himself, but he could not stand for very long. (Tr. at 182.) He could do very light household chores but he would have to rest after a short time. (*Id.*) He explained he could not do much housework because he was in severe pain that was aggravated by activity. (Tr. at 183.) He shopped in stores for groceries a few times a month. (Tr. at 184.) He said he did not have any hobbies. (*Id.*) In the form, he checkmarked boxes indicating he had trouble lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, indicating that these activities were affected by his condition. (Tr. at 185.) He did not put checkmarks in memory, concentration, understanding, or following instructions. (*Id.*) The distance he thought he could walk before needing to stop and rest depended on his level of pain. (*Id.*) He followed written and spoken instructions, and handled stress and changes in routine "ok." (Tr. at 186.) He also used a cane when his pain was severe; he said it had been prescribed a few years ago. (*Id.*) He said he was not taking any medicine to treat his condition. (Tr. at 187.)

At the administrative hearing, Plaintiff testified that he stopped working in March, 2010 because his back, head, and shoulder pain had become unbearable. (Tr. at 42-43.) He explained that his neck and head hurt, and this pain would put him off balance. (Tr. at 43.) He thought

that he was hit from behind at work and that had caused a head injury. (Tr. at 43.) He stated that he was suffering from headaches "all the time" and they were preventing him from doing daily activities. (Tr. at 44.) He explained that the headaches would last for a day or two. (Tr. at 44-45.) He refused to take medicine like Vicodin to treat his headaches because he did not want those kinds of medicines in his house. (Tr. at 45.)

Plaintiff testified that he was having problems with his memory. (Tr. at 45.) His neck pain radiated down into his right arm, sometimes all the way down to his right wrist. (Tr. at 46.) He often would wake up with a stiff neck. (Tr. at 46-47.) He experienced pain every day and could not lift his right arm; he had to brush his teeth with his left arm even though he was right-handed. (Tr. at 47.) He answered "no," when asked if he experienced other symptoms, such as numbness, on his right side, but then he explained that his right side would sometimes "numb up." (Tr. at 47-48.)

He testified that he did not do anything at home except watch television. (Tr. at 48.) He did not think he could lift eight pounds. (Tr. at 48.) Plaintiff indicated that he was unable to raise his arm above his shoulder without pain. (Tr. at 48-49.) He claimed to have herniated and bulging disks in his lower back. (Tr. at 49.) According to him, his assembly job had required him to take approximately 2700 parts off the "line" and put them into a basket on the floor: he needed to be able to lift between ten and twelve pounds, twist, and bend all the way down to the floor. (Tr. at 52-53.) The back pain radiated down his left leg into his knee, and when that happened he would have to get into a good position. (Tr. at 53.) His leg would also go numb just like his arm did. (Tr. at 53-54.)

He rarely missed work before his injury; since his injury he has been unable to work. (Tr. at 54.) He said that he would have to miss thirty out of thirty days because, even if his back was not causing him so much pain, he could not even lift his hand. (*Id.*)

He was able to bathe himself, although he had to use only his left hand. (Tr. at 56.) He did not do any housework. (*Id.*) He used to be a prolific bowler but he had not bowled since January of 2010 because of his pain. (Tr. at 57.) He had withdrawn from social activities, such as being a high school basketball referee and president of his community block, because of his symptoms–now he mostly just watched television and sometimes went outside or to the store with his wife. (Tr. at 57-58.)) He said he used to do a lot of yard work, but was no longer able. (Tr. at 58.)

The pain affected his ability to sleep at night–usually he only got two consecutive hours of sleep. (Tr. at 58-59.) Consequently he napped throughout the day and he was never well-rested. (Tr. at 59.) He testified that he could only sit or stand for between five to ten minutes at a time. (Tr. at 59- 60.) He said at home he would usually alternate between sitting, standing, and walking. (*Id.*) Also, he could not walk any more than ten minutes at a time. (Tr. at 60.) He could not bend over and touch his toes or even his knees, and he speculated that it would be painful to squat down to pick something up off the floor. (*Id.*) He said he would not be safe climbing even if he leaned against the wall. (*Id.*) He took only his medicine for high blood pressure, and was refusing to take his diabetes medicine and cholesterol medicine. (Tr. at 65.) He said he did not know of any side effects. (*Id.*)

Plaintiff testified that on March 22, 2010 he was at work and a supervisor struck him from behind in the head. (Tr. at 70.) The ALJ advised Plaintiff's attorney that there were no

records contemporaneous with the injury that showed Plaintiff had been struck in the head. (Tr. at 70-72.) Instead, all the contemporaneous records showed that Plaintiff had been struck in the neck and shoulder region. (*Id.*) The ALJ explained that the only records that pointed to a closed-head injury came from the psychiatrist to whom Plaintiff's attorney sent Plaintiff in May of 2012. (*Id.*)

Throughout the hearing, in attempt to relieve his pain, Plaintiff alternated between sitting and standing up to lean against the wall. (Tr. at 33-73.) After the VE testimony, Plaintiff added that the plant had removed all chairs from the plant and no more sitting down was allowed, not even for breaks. (Tr. at 80.)

### 3.    Vocational Expert ("VE") Testimony at Administrative Hearing

The VE testified that Plaintiff's past work was "that of an assembler, light, [and] unskilled." (Tr. at 75.) The VE's testimony was based on and consistent with the Dictionary of Occupational Titles. (Tr. at  74.) The ALJ posed a series of hypothetical questions to the VE, all of them based on Plaintiff's age, education, and work experience. (Tr. at 75.) In the first hypothetical,

> [the] individual would be able to perform work at the light level which is lift up to 20 pounds occasionally, lift [and] carry up to 10 pounds frequently. They would be able to stand, walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks. They can occasionally operate foot controls, they can never climb ladders, ropes or scaffolds, they can occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch and crawl. [And] [t]hey would have to avoid all exposure to unprotected heights.

(Tr. at 75.) The VE testified that the individual would be able to perform Plaintiff's past work. (*Id.*)

The second hypothetical had the same limitations as the first and "[a]dditionally this individual would be allowed to sit or stand alternatively provided they weren't off task more than 10 percent of the work period. And they would be limited to jobs that could be performed while using a handheld assistive device only for uneven terrain or prolonged ambulation." (Tr. at 76.) When asked if the individual could do Plaintiff's past work, the VE said "no" because, while there were assembler jobs that allowed for sit/stand option, he was unsure if Plaintiff's had a sit/stand option. (*Id.*) The VE then distinguished between an assembler's job as it is generally performed and as it was actually performed in Plaintiff's case. (*Id.*) He explained that only a subset (4000 out of 10,000) of the assembly jobs in the region allowed for the sit/stand postural limitation. (*Id.*) He also testified that there were other jobs available in the regional economy that the individual could do, for example an inspector (3000 regional jobs) and sorter (800 regional jobs). (*Id.*)

The third hypothetical individual would also be "off task 20 percent of the day in addition to the regularly scheduled breaks." (Tr. at 78-79.) The VE testified that this limitation would be work-preclusive no matter why the individual was off-task. (*Id.*) The fourth hypothetical also "would be absent from work for two workdays per month" because of doctor visits and symptoms. (Tr. at 79.) The VE also found the fourth hypothetical work-preclusive. (*Id.*)

## F.    Governing Law and Analysis

If the Commissioner's decision applied the correct legal standards and was supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42

14

U.S.C. § 405(g);  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);

*Mullen*, 800 F.2d at 545.

### 1.    Legal Standard

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed

the RFC to perform limited light work. (Tr. at 26.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
> be very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and pulling
> of arm or leg controls. To be considered capable of performing a full or wide range
> of light work, you must have the ability to do substantially all of these activities. If
> someone can do light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in

his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn

next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

### a.    Substantial evidence standard

In deciding whether substantial evidence supports the ALJ's decision, "we do not try the

case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d

at 509; *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). A reviewing court must

consider the evidence in the record as a whole, including any evidence that might subtract from

the weight of the Commissioner's factual findings. *Wyatt v. Sec'y of Health & Human Servs.*,

974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to

any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his [or her] written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

**b.** **Opinion evidence, credibility assessment, and the RFC**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the

16

form of opinions "about the nature and severity of an individual's impairment(s), including

symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s),

and physical and mental restrictions." SSR 06-03p, 2006 WL 2329939, at *2. When

"acceptable medical sources" issue these opinions, the regulations deem the statements to be

"medical opinions." 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions"

are various decisions reserved to the Commissioner, such as whether the claimant meets the

statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of these

medical opinions, including any treating source opinions that have not been given controlling

weight. 20 C.F.R. § 404.1527(c). The ALJ should use the same analysis for "other source"

opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Further, an ALJ must give a treating physician's opinions regarding the nature and

severity of a claimant's impairments controlling weight when it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent

with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); SSR 96-

2p, 1996 WL 374188, at *1-2; *see also Wilson*, 378 F.3d at 544. Matters that are reserved to

the Commissioner are not "medical opinions" so they do not receive this deference. 20 C.F.R. §

404.1527(d)(2). Additionally, a physician's notations of a claimant's subjective complaints is

the "'opposite of objective medical evidence'" and the ALJ need not give the opinions based

solely on those assertions controlling weight. *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067

(N.D. Ill. 2011) (quoting *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)). The regulations

also require an ALJ to provide "good reasons" for the weight assigned to the treating source's

17

opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

The regulations establish the following process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ evaluates symptoms by confirming, with medical signs and laboratory findings, that a medical impairment exists which "could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. § 404.1529. The ALJ then determines whether that condition could reasonably be expected to produce the alleged symptoms or whether other objective evidence verifies the symptoms. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the ALJ determines the extent of work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While a claimant's description of symptoms alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a), an ALJ may not disregard a claimant's subjective complaints about the severity and persistence of symptoms simply because substantiating objective evidence is lacking. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of confirming objective evidence regarding the severity and persistence of symptoms forces an ALJ to consider these factors:

> (i) . . . [D]aily activities; (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms; (v) Treatment, other than medication, . . . received for relief of . . . pain or other symptoms; (vi) Any other measures . . . used to relieve . . . pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. The claimant's work history and the consistency of subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse*, 502 F.3d at 542 (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones*, 336 F.3d at 475 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Yuckert*, 482 U.S. at 146 n.5. The RFC "is the most [the claimant] can still do despite [the] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The hypothetical is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health*

*& Human Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

    **c.**    **Analysis**

Plaintiff first argues that at step four the ALJ improperly delegated his fact-finder role to the VE and therefore substantial evidence did not support the ALJ's determination that Plaintiff could perform his past relevant work in assembly. (Doc. 9 at 7.) Defendant responds that substantial evidence did support the ALJ's finding at step four and, alternatively, to the extent this determination was not supported by substantial evidence, the error was harmless because the ALJ alternatively found at step five that other jobs existed in sufficient numbers in the national economy that Plaintiff could perform. (Doc. 10 at 10-12.)

It is true that the "ALJ, and not the VE, must evaluate [a] plaintiff's ability to perform past relevant work." *Sweeney v. Comm'r of Soc. Sec.*, No. 13-CV-12761, 2014 WL 4374348, at *2 (E.D. Mich. Sept. 4, 2014). However, the same type of hypothetical that the ALJ posed to the VE here has been found to not amount to an improper delegation of the step four analysis: in fact, "[t]his is precisely why the ALJ asks the VE questions in terms of hypotheticals." *See Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *6 (E.D. Mich. Mar. 2014).

Plaintiff contends that, because the VE determined that the first two hypothetical individuals could perform Plaintiff's past relevant work as generally performed and because the ALJ ultimately decided Plaintiff "could perform his past relevant work[] in accordance with the first two hypotheticals," it follows that the ALJ actually shifted his fact-finding responsibility to the VE. (Doc. 9 at 7.) Plaintiff then asserts that "[t]he ALJ ignored the

testimony of the VE that "being off task greater than 20% and missing more than 2 days per month" would be work preclusive. (*Id.*) Plaintiff wants to have it both ways–in one breath he asserts that the ALJ ignored the VE *and* delegated fact-finding to the VE. In reality, the ALJ synthesized the VE's expert testimony with the record and Plaintiff's testimony, determined what evidence was credible with regard to how long Plaintiff could be off-task, and constructed the RFC accordingly. He made his determination at step four based on this RFC. Therefore, I suggest, that the ALJ did not improperly delegate his fact-finding role to the VE at step four.

Alternatively, even if the ALJ did improperly delegate his fact-finding role at step four, because he made an alternative step five finding of not disabled, this error would have been harmless. *See, e.g.*, *Powers*, 2014 WL 861541, at *7 (finding that ALJ's step four determination was at worst harmless error because the alternative determination at step five was supported by substantial evidence). The ALJ integrated a sit/stand limitation into the last three hypotheticals, which reduced the available assembly positions from 10,000 to 4000. (Tr. at 27.) He also found alternatively at step five that, considering Plaintiff's "age, education, work experience, and [RFC], there [were] other jobs . . . exist[ing] in significant numbers in the national economy" that Plaintiff could perform. (Tr. at 28.)

Defendant argues that Plaintiff has waived any remaining arguments by failing to develop them. (Doc. 10 at 15-16.) When issues are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," they are deemed waived. *McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997). This district has found that when a party's brief is "completely devoid of any discernable legal argument" the plaintiff's motion

should be denied since the only argument in it has been waived. *Burger v. Commissioner of Social Security*, No. 12-11763,2013 WL 2285375 (E.D. Mich. May 23, 2013). "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones. *McPherson*, 125 F.3d at 995-96.

I suggest that Plaintiff has waived all remaining arguments by only adverting to them in a subheading and making no effort to develop them.[2] Plaintiff's remaining arguments can only

---

[2] Unfortunately this is not the first time Plaintiff's attorney has waived or risked waiving these arguments. *See, e.g.*, *Alexander v. Commissioner of Soc. Sec.*, No. 13-cv-12434, 2014 WL 4678057, at *5 (Sept. 18, 2014) (adopting Report & Recommendation) ("Plaintiff's brief predominately contains recitations of law with no discernable connection to the few details Plaintiff provided the record evidence."); *Doyle v. Comm'r of Soc. Sec.*, No. 13-12916, 2014 WL 4064251, at *18 (E.D. Mich. Aug. 18, 2014) (adopting Report & Recommendation) ("To the extent Plaintiff relies on the treating source rule to support any of his arguments, he has waived the argument."); *Barringer v. Comm'r of Soc. Sec.*, No. 13-CV-12746, 2014 WL 4064575, at *13 n.10 (E.D. Mich. Aug. 18, 2014) ("Throughout this Opinion, the Court has referenced the confusing and undeveloped nature of many of Plaintiff's arguments."); *Gutierrez v. Comm'r of Soc. Sec.*, No. 13-cv-12314, 2014 WL 3956177, at *9 (E.D. Mich. Aug. 13, 2014) (adopting Report & Recommendation) (finding "plaintiff's arguments are wholly insufficient and undeveloped"); *Little v. Comm'r of Soc. Sec.*, No. 13-CV-13558, 2014 WL 3778213, at *8 (E.D. Mich. July 31, 2014) (adopting Report & Recommendation) (calling argument "quite undeveloped"); *Beardsley v. Comm'r of Soc. Sec.*, No. 13-cv-12954, 2014 WL 3125128, at *9 (E.D. Mich. July 8, 2014) (adopting Report & Recommendation) (noting that Plaintiff's "arguments are, at best, skeletal in nature, and at worst, nonexistent"); *Larner v. Comm'r of Soc. Sec.*, No. 13-11464, 2014 WL 1746529, at *6 n.7 (E.D. Mich. Apr. 30, 2014) (adopting Report & Recommendation) ("Numerous judges of this Court have criticized Plaintiff's counsel for his penchant for raising generalized but undeveloped arguments lacking citation to or support in the record . . . ."); *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, at *1-2 (E.D. Mich. Mar. 24, 2014) (finding Plaintiff's claims waived); *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *15 (E.D. Mich. Sept. 25, 2013) (adopting Report & Recommendation) (finding argument "wholly insufficient and undeveloped"); *Villarreal v. Comm'r of Soc. Sec.*, No. 12-cv-12041, 2013 WL 3981008, at *6 (E.D. Mich. Aug. 1, 2013) (adopting Report & Recommendation) (characterizing argument as "vague and undeveloped"); *Ramsey v. Comm'r of Soc. Sec.*, No. 12-13328, 2013 WL 3835171, at *5 n.9 (E.D. Mich. July 24, 2013) (adopting Report & Recommendation) (finding an argument "unclear, undeveloped, and waived"); *Valdez v. Comm'r of Soc. Sec.*, No. 12-13215, 2013 WL 3013668, at * (E.D. Mich. June 18, 2013) (adopting Report & Recommendation) ("Plaintiff recites the treating-source rule and accompanying law, but makes no effort to apply that law to this case."); *Burger v. Comm'r of Soc. Sec.*, No. 12-CV-11763, 2013 WL 2285375, at *5 (E.D. Mich. May 23, 2013) (adopting Report & Recommendation) (noting that "Plaintiff's brief is completely devoid of any discernable legal argument," and recommending finding the arguments waived); *Dice v. Comm'r of Soc. Sec.*, No. 12-cv-11784, 2013 WL 2155528, at *3 (E.D. Mich. Apr. 19, 2013) ("Plaintiff's brief is, at best, sparse and difficult to follow. . . . In the view of the undersigned, plaintiff's argument is wholly insufficient and undeveloped."); *Deguise v. Comm'r of Soc. Sec.*, No. 12-10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb. 19, 2013) ("Plaintiff's arguments . . . are so woefully underdeveloped that they need not be considered any further."), *adopted by* 2013 WL 1187291, at *1 (E.D. Mich. Mar. 22, 2013); *Corlew v. Comm'r of Soc. Sec.*, No. 12-10004, 2013 WL 1190208, at * (E.D. Mich. Feb. 19, 2013) ("Plaintiff's arguments are so woefully underdeveloped that they need not be considered any further."), *adopted by* 2013 WL 1187515, at *1 (E.D. Mich. Mar. 22, 2013); *Jackson v. Comm'r of Soc.*

be found in the title of his second subheading in the argument section of his brief: "the commissioner erred as a matter of law by improperly assessing Mr. Greene's credibility, and by failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray Mr. Greene's impairments." (Doc. 9 at 10 (emphasis omitted).) After this, he simply reiterates his symptoms, asserts that the ALJ should have adopted more limitations in his RFC assessment, and concludes. (Doc. 9 at 10-12.) Plaintiff must do more.

An ALJ cannot rely exclusively on a claimant's description of his symptoms. 20 C.F.R. § 404.1528(a). If there is an absence of confirming evidence regarding the severity and persistence of the claimant's symptoms, the ALJ must consider several factors in assessing the claimant's credibility. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ properly considered all the relevant factors. (Tr. at 20-24.) I suggest that his findings are supported by substantial evidence. Dr. Hussain diagnosed lumbar radicular pain, myofascial pain syndrome, and cervical facet arthropathy, but also noted "[n]o significant range of motion and limitation." (Tr. at 198-99.) An MRI of the cervical spine showed "a broad-based central disc bulge at C3-C4 and C4-C5" but with only "very slight effacement" and "moderate narrowing[.]" (Tr. at 221-24.) Dr. Buchman diagnosed "[l]ow back pain without signs of melopathy or herniated disc." (Tr. at 232.) His conclusion was that Plaintiff was "able to sit, stand or walk eight hours

---

*Sec.*, No. 11-14672, 2013 WL 1148417, at *7 (E.D. Mich. Feb. 19, 2013) (calling Plaintiff's argument "wholly insufficient and undeveloped"), *adopted by* 2013 WL 1148416, at *1 (E.D. Mich. Mar. 19, 2013); *Polzin v. Comm'r of Soc. Sec.*, No. 11-15030, 2013 WL 1148187, at *6 (E.D. Mich. Feb. 15, 2013) ("Plaintiff's argument is wholly insufficient and undeveloped."), *adopted by* 2013 WL 1148008, at *1 (E.D. Mich. Mar. 19, 2013); *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) ("Bush's failure to make any developed arguments about any alleged errors in the ALJ's decision could permit this court to disregard his brief . . . ."), *adopted by* 2013 WL 1747828, at *1 (E.D. Mich. Apr. 23, 2013).

in an eight-hour day. He c[ould] do fine or gross manipulation with his hands. He [was] able to interact with people." (*Id.*) At this visit Plaintiff was using a cane in his left hand that he said had been recommended by Dr. Raffee (Tr. at 230); however, Dr. Buchman noted that Plaintiff's "[t]andem gait was satisfactory" and opined that "[c]linical evidence d[id] not support" Plaintiff's need for the cane. (Tr. at 231.) Dr. Buchman also indicated that Plaintiff could sit with frequent changes in position, stand, bend, stoop, carry, push, pull, button clothes, tie shoes, dress/undress, open doors, make a fist, write, get on and off exam table, and climb a few stairs at a time. (*Id.*) Dr. Shah also found Plaintiff's gait to be normal. (Tr. at 234-35.) Finally, Plaintiff's own statements about his daily activities support a finding of non-disability. Plaintiff indicated that he can take care of his own daily needs, he is able to prepare "quick and easy" meals by himself, is able to do very light household chores with rest periods, and can shop in stores for groceries a few times a month. (Tr. at 182-84.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### G.   Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 26, 2014            /S PATRICIA T. MORRIS
                                    Patricia T. Morris
                                    United States Magistrate Judge